IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN WALTZ                                                    PLAINTIFF

        v.                          CIVIL NO. 10-5054

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Steven Waltz, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying his claim for a period of disability and disability insurance benefits (DIB) under the

provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed his current application for DIB on July 9, 2007, alleging an

inability to work since March 1, 2007, due to severe light sensitivity, seizures and/or syncopal

episodes, and headaches.  (Tr. 116-118, 142).  An administrative hearing was held on January

8, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 8-57).

By written decision dated May 12, 2009, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.67).

Specifically, the ALJ found Plaintiff had the following severe impairments: epilepsy/seizure disorder and a mood disorder. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 67). The ALJ found Plaintiff retained the residual functional capacity (RFC) to

> perform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant cannot drive, tolerate exposure to hazards, such as unprotected heights or heavy machinery, and he cannot climb ropes/ladders/scaffolds. The claimant can have no exposure to extreme heat. The cliamant (sic) can perform low stress (occasional decision making and occasionally changes in work place settings), unskilled work.

(Tr. 69). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a hand packager, a small products assembler and a machine tender.

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 19, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). On August 17, 2010, Plaintiff filed a Motion to Introduce New Evidence. (Doc. 9). On August 25, 2010, Defendant filed a Response objecting to the Motion. (Doc. 12). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11,15).

## II.    Evidence Presented:

At the administrative hearing before the ALJ on January 8, 2009, Plaintiff, who was fifty-two years of age, testified that he obtained a high school education. (Tr. 14). Plaintiff testified that in June of 2008 he started working part-time at a convenience store as a cashier, cook and stocker. (Tr. 17). Plaintiff testified that he went to work full-time for a couple of months but

-2-

had to go back to part-time work because the job was too stressful.  (Tr. 18).  Plaintiff explained

that he had difficulty being a cashier, cook and stocker all at the same time, especially when the

store was busy and he was the only employee working.  The record reflects Plaintiff's past

relevant work consists of work as a  forklift operator and a mat packer (Tr. 51-52).

> The pertinent medical evidence in this case reflects the following.  In a letter dated

December 8, 2006, Dr. Mark A. Bonner stated Plaintiff was under his care and could return to

work as of December 8, 2006.  (Tr. 228).  Dr. Bonner restricted Plaintiff from working more than

forty hours per week for the next two weeks.

> On December 21, 2006, Plaintiff underwent a CT of the head which revealed no acute

intracranial hemorrhage; and a 2.5 cm right maxillary sinus mucous retention cyst and rightward

nasal septal nasal deviation.  (Tr. 309).

> In a letter dated January 29, 2007, Dr. Ryan Kaplan stated he saw Plaintiff for

consultation. (Tr. 243-248).  Dr. Kaplan noted Plaintiff had been having spells of language

disturbance that occurred two to three times a week and that the spells lasted from minutes to

hours.  Dr. Kaplan noted during two of the spells Plaintiff passed out for a couple of minutes and

woke up groggy and confused.  Dr. Kaplan noted Plaintiff's spells appeared to be triggered when

Plaintiff was tired and fatigued.  Dr. Kaplan noted Plaintiff's muscle strength and tone were

normal.  He indicated Plaintiff was oriented to time, place and person.  Dr. Kaplan noted

Plaintiff's recent and remote memory were good; that Plaintiff's attention span and concentration

were normal; and that Plaintiff's language showed no signs of aphasia.[1]  Dr. Kaplan opined

---

[1]Aphasia is defined as "any of a large group of language disorders involving defect or loss of the power of expression by  speech, writing, or signs, or of comprehending spoken or written language, due to injury or disease of the brain or to  psychogenic causes."  Dorland's Illustrated Medical Dictionary at 116, 31st Edition (2007).

Plaintiff was having seizures.  Dr. Kaplan stated he started Plaintiff on Carbatrol, a seizure medication.  Dr. Kaplan stated that he preferred Plaintiff not work night shifts and recommended Plaintiff undergo a brain MRI.

In a letter dated February 21, 2007, Dr. Kaplan noted he saw Plaintiff for a followup visit. (Tr. 240).  Dr. Kaplan noted Plaintiff reported having numerous spells a week which Dr. Kaplan opined were strongly suggestive of partial seizures.  Dr. Kaplan stated he had started Plaintiff on Carbatrol and since Plaintiff was tolerating the medication well Dr. Kaplan recommended titrating the dosage upward.  Dr. Kaplan noted Plaintiff reported he had another spell just the other day.  Dr. Kaplan stated since Plaintiff reported the spells occurred when he was very fatigued, he wrote Plaintiff a note for his work, stating Plaintiff could not work more than forty hours per week.  Dr. Kaplan noted he had a long conversation with Plaintiff regarding seizure precautions. Dr. Kaplan stated he told Plaintiff he should not be driving a forklift at work.  Dr. Kaplan stated Plaintiff's brain MRI did not show any significant disease but noted a right maxillary sinus retention cyst. (Tr. 241).   Dr. Kaplan opined this was completely unrelated to Plaintiff's chief complaint.

On March 8, 2007, Plaintiff was seen by Dr. Bonner complaining of dysarthria[2] with an onset of about a month with associated slurred speech and lightheadedness. (Tr. 235).  After examining Plaintiff, Dr. Bonner's assessment stated fainting/vasovagal attack pending work-up, speech disturbance pending work-up, and cyst pharynx/nasopharynx pending work-up. Dr. Bonner indicated no unusual anxiety or evidence of depression.  Plaintiff's medications consisted

---

[2]Dysarthria is defined as a speech disorder consisting of imperfect articulation due to loss of muscular control after damage to the central or peripheral nervous system.  Id. at 583, 31st Edition  (2007).

of Antivert, Alprazolam and Carbatrol.

In a letter dated April 5, 2007, Dr. Kaplan stated that Plaintiff had been referred for spells. (Tr. 234). Dr. Kaplan noted that an EEG was negative but he indicated EEGs have a high false negative rate. Dr. Kaplan stated that since Plaintiff's MRI of the brain and carotid ultrasound were both unremarkable, Plaintiff could be having seizures. Dr. Kaplan stated he had decided to treat Plaintiff with medication (Carbatrol) which Plaintiff responded to very well. Dr. Kaplan stated Plaintiff had not had any spells in several weeks. Dr. Kaplan stated that this was further evidence that Plaintiff's spells could be epileptic in origin. Dr. Kaplan stated that he could not be 100% certain and that if Plaintiff wanted more definitive proof, Plaintiff should go to Little Rock to meet with the epiliptologist for prolonged EEG monitoring. Dr. Kaplan stated Plaintiff became extremely upset with him because he had told Plaintiff's work about Plaintiff's seizure precautions. Dr. Kaplan stated Plaintiff had initially given him permission to talk to his work. Dr. Kaplan stated Plaintiff reported that he was now in financial hardship and that he had recommended to Plaintiff that he seek a second neurological opinion. Dr. Kaplan stated that he reassured Plaintiff that Dr. Moon was an excellent neurologist.

On April 10, 2007, Dr. Kaplan noted that he spoke with Plaintiff's work concerning Plaintiff's restrictions. (Tr. 233). Dr. Kaplan noted that Plaintiff's work wanted to know if the restrictions were permanent or temporary and that he had indicated they were temporary because Plaintiff had not undergone a full work-up. Dr. Kaplan noted that the person he spoke to had indicated they would try to find an alternate position for Plaintiff.

On April 11, 2007, Plaintiff underwent an initial evaluation of his episodes of unresponsiveness, by Dr. Steven L. Moon. (Tr. 232). Dr. Moon noted Plaintiff reported he had

-5-

undergone a full evaluation by Dr. Kaplan recently which included MRI imagining and EEG testing. Plaintiff reported Dr. Kaplan had treated him with Carbatrol and recommended that Plaintiff not drive or involve himself with any activities that might be dangerous in the event of loss of consciousness. Plaintiff reported that Dr. Kaplan said he needed to go to Little Rock for additional monitoring. Dr. Moon noted that he did not perform a full evaluation as Dr. Kaplan had already performed one recently. Dr. Moon noted Plaintiff was in agreement with this. Dr. Moon recommended that Plaintiff continue on with the precautions Dr. Kaplan had given him and to follow up with Dr. Kaplan.

In a medical note dated June 12, 2007, Dr. Kaplan stated that he spoke with a Dr. Towbin, an epileptologist, about seizure precautions versus seizure restrictions in work duties. (Tr. 231). Dr. Kaplan stated Dr. Towbin was inclined to detail precautions as opposed to actually restricting a patient. Dr. Kaplan stated he was going to follow Dr. Towbin's approach as Plaintiff had not been formally diagnosed with epilepsy. Dr. Kaplan stated he called Plaintiff and the nurse at Plaintiff's work.

In a letter dated June 14, 2007, Dr. Kaplan stated he was releasing Plaintiff back to work without any restrictions. (Tr. 230). Dr. Kaplan stated the cautions he reviewed with Plaintiff included the following: driving heavy machinery, machinery with dangerous moving parts, and climbing high places.

In a letter dated July 5, 2007, Dr. Kaplan stated Plaintiff was under his neurologic care and that Plaintiff's date of disability was March 1, 2007. (Tr. 229, 314). Dr. Kaplan stated the underlying cause of Plaintiff's disability was a seizure disorder. Dr. Kaplan stated Plaintiff had the following limitations:

-6-

no work on assembly lines, no driving, no working with heavy machinery, no working with power tools, no climbing ladders or high places, no working with any heavy objects or any type of electrical appliance that could produce injury should he have a spell or seizure.

(Tr. 229).

In a Clinic note dated July 27, 2007, Dr. Kaplan noted he saw Plaintiff for a follow up appointment. (Tr. 295). Dr. Kaplan noted Plaintiff was experiencing headaches once every two weeks approximately and that Plaintiff was treating these headaches with over-the-counter agents. Dr. Kaplan also noted Plaintiff had seizures. Dr. Kaplan reported Plaintiff was no longer experiencing blackout spells but he was still having frequent bouts of language disturbance/aphagia[3] which happened every three to five days. Dr. Kaplan increased Plaintiff's Carbatrol. Dr. Kaplan noted Plaintiff deferred any lab tests due to a lack of finances. Dr. Kaplan noted he spent a lot of time looking over Plaintiff's charts and filling out multiple pieces of paperwork.

On July 27th, Dr. Kaplan completed a migraine headache report indicating that Plaintiff experienced frontal headaches for which Plaintiff took over-the-counter medication. (Tr. 237). Dr. Kaplan opined Plaintiff's headaches did not cause any work related limitations.

On July 27th, Dr. Kaplan also completed a seizure disorder report indicating Plaintiff had blackout events and spells of aphasia two to three times per week. (Tr. 238-239). Dr. Kaplan noted Plaintiff started medication for seizures in January of 2007 and had the dosage adjusted in March of 2007.

On August 22, 2007, Dr. Wheatley Beard, a non-examining medical consultant,

---

[3]Aphagia is defined as the inability to swallow. Id. at 116, 31st Edition (2007).

-7-

completed a RFC assessment stating that Plaintiff had no exertional, postural, manipulative, visual or communicative limitations.  (Tr. 249-256).  Dr. Beard opined Plaintiff was to avoid even moderate exposure to hazards such as machinery, heights, etc. After reviewing all the evidence, Dr. Mary Lanette Rees affirmed Dr. Beard's findings on September 26, 2007; and Dr. Bill F. Payne affirmed Dr. Beard's findings on November 13, 2007.  (Tr. 293-294, 298).

On August 23, 2007, Dr. Brad F. Williams, a non-examining medical consultant, completed a Psychological Review Technique Form (PRTF) and opined that Plaintiff had a mental impairment but the impairment was not severe because it was not expected to last twelve months. (Tr. 261).  Dr. Williams opined Plaintiff had mild restrictions of his activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration persistence or pace; and no repeated episodes of decompensation, each of extended duration. (Tr. 261-288).  Dr. Williams stated the following:

> The claimant is 50 years old with 12 years of education. He has worked as a production line worker and fork lift operator in the recent past. He alleges a seizure disorder and TIAs.  He does not make any specific mental allegations. His PCP has prescribed Alprazolam. However, his PCP noted no unusual anxiety or depression on his last visit in 03/07. Not severe mentally.

(Tr. 273, 287). After reviewing all the evidence, Dr. Dan M. Cox affirmed Dr. Williams' findings on September 12, 2007.  (Tr. 291).

In a Clinic Note dated September 28, 2007, Dr. Kaplan noted Plaintiff was doing much better.  (Tr. 303).  Plaintiff reported he really only had a couple of intermittent episodes of language disturbance on the higher dose of Carbatrol.  Dr. Kaplan noted that the 300 mg dose was making Plaintiff a little tired so Plaintiff was going to 200 mg three times a day.  Dr. Kaplan noted Plaintiff had a lot of samples of this medication at home.  Dr. Kaplan noted he had talked

-8-

to Plaintiff about changing his medication to Dilantin and that Plaintiff wanted to hold off on the change because Plaintiff could not afford to get the blood tests.  Dr. Kaplan noted that he believed Plaintiff was also applying for long-term disability.

In a Clinic Note dated January 8, 2008, Plaintiff reported he had backed down the Carbatrol to 200 mg twice a day rather than three times a day and was doing well. (Tr. 301).  Dr. Kaplan noted Plaintiff was still not working and appeared to be harboring a "tremendous amount of resentment" towards him.  Dr. Kaplan noted Plaintiff thought he lost his job because of what Dr. Kaplan told his employer.  Dr. Kaplan noted that he just told the employer about limitations due to Plaintiff's underlying probable seizure disorder.  Dr. Kaplan noted Plaintiff had not gone for any long-term EEG monitoring to actually prove the diagnosis.

In a letter dated January 9, 2008, Dr. Kaplan stated that Plaintiff could return to work.[4] (Tr. 302).  Dr. Kaplan noted he had gone over Plaintiff's job duties and would not include any restrictions in Plaintiff's return to work.  However, Dr. Kaplan stated that caution needed to be exercised if Plaintiff was to use a forklift, hand jack, double reach or wrapping machine.  Dr. Kaplan opined that caution should also be exercised when Plaintiff was exposed to extreme heat and cold.

The new evidence Plaintiff moved to be considered reflects the following.  In a letter dated December 15, 2009, Dr. Kaplan stated Plaintiff was completely disabled from a neurological standpoint. (Doc. 9, Attachment 1).  Dr. Kaplan stated Plaintiff had been diagnosed

---

[4]In a letter dated January 8, 2008, Mr. Jeffrey T. Koogler, RN, of Tyson of Fayetteville wrote to Dr. Kaplan asking about possible work restrictions that Plaintiff had due to his impairments.  (Tr. 305-306).

just recently with myasthenia gravis[5] and had severe weakness in his arms and legs.  Dr. Kaplan

opined that due to Plaintiff's weakness he could not hold down "any type of job whatsoever."

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d

964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the Court would have

decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ

must be affirmed.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity.  Pearsall v.

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results

---

[5]Myasthenia gravis is defined as "an autoimmune disease of neuromuscular function...characteristics include muscle
fatigue and exhaustion that fluctuates in severity, without sensory disturbance or atrophy...it may affect any muscle of
the body, but especially those of the eyes, face, lips, tongue, throat and neck." Id.  at 1233, 31st Edition (2007).

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. § 404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

IV.   **Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination.

A.     **Motion for New and Material Evidence:**

A court may remand a social security claim for consideration of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Hepp v. Astrue, 511 F.3d 798, 808 (8th Cir.2008) (quoting 42 U.S.C. § 405(g)). "To be material, new evidence must

-11-

be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination." Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir.1993).

In the ALJ's decision of May 12, 2009, the ALJ expressly noted that the time period under consideration was March 1, 2007 through May 12, 2009. The new evidence, a letter from Dr. Kaplan, is dated December 15, 2009. With regard to this letter, the Court points out that it was written over seven months after the relevant time period. Furthermore, Dr. Kaplan stated Plaintiff had "just recently" been formally diagnosed with myasthenia gravis. This new evidence Plaintiff moved to submit does not indicate when Dr. Kaplan last saw Plaintiff or provide treatment records to support his findings. As will be discussed below, it is noteworthy that Dr. Kaplan released Plaintiff to return to his work without restrictions in January of 2008 and there is no evidence to show that he treated Plaintiff again until December of 2009. The Court finds this evidence does not alter Plaintiff's condition as it existed at the time the ALJ made his decision and, thus, is not material to Plaintiff's instant application. Thomas v. Sullivan, 928 F.2d 255 (8th Cir. 1991). However, the Court notes that this evidence might provide a basis for the filing of a new application for benefits.

In order for new evidence to be submitted, Plaintiff must also show good cause for failing to incorporate the evidence into the administrative proceeding. Plaintiff contends that good cause exists for not including the records in the administrative proceeding because at the time of the administrative hearing Plaintiff's treating physicians were "unable to diagnose the cause of Plaintiff's condition;" and that Plaintiff "had called Dr. Kaplan's office three times in order to schedule a check-up and was still awaiting a return phone call." While this might provide good

-12-

cause for the failure to incorporate the new evidence into the record at the prior hearing, Plaintiff, who was represented by counsel during the administrative proceeding, did not address why he failed to ask the Appeals Council to consider the new evidence as permitted by 20 C.F.R. § 404.1785.   The Appeals Council denied Plaintiff's request to review the ALJ decision on February 19, 2010, two months after Plaintiff's treating physician wrote the letter Plaintiff now wishes to include as part of the record.   Because Plaintiff failed to address why this evidence was not submitted to the Appeals Council, the Court does not find Plaintiff established good cause for failing to incorporate the evidence into the administrative proceeding. See Hepp, 511 F.3d at 808 (citing Hinchey v. Shalala, 29 F.3d 428, 433 (8th Cir.1994))("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing a sufficient explanation.").   Based on the above, the Court will not consider this evidence when determining if substantial evidence supports the ALJ's determination.

**B.      Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:   (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.   See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.   As the United States Court of Appeals for the Eighth Circuit observed, "Our

-13-

touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's probable seizure disorder with symptoms of tingling, blackouts, slurred speech and asphagia, the medical evidence reveals that Plaintiff sought treatment after experiencing two blackouts in late 2005 and early 2006. Dr. Kaplan's April of 2007 treatment notes indicate that, while Plaintiff was not definitively diagnosed with a seizure disorder, the seizure medication (Carbatrol) Plaintiff was prescribed to treat the spells was working, so Dr. Kaplan believed Plaintiff's spells were more than likely seizures. In July of 2007, Plaintiff reported he was no longer having blackout spells, but he continued to have bouts of language disturbance, so Dr. Kaplan increased his dosage of Carbatrol. By September of 2007, Plaintiff reported only having a couple of intermittent episodes of language disturbance on the higher dose of Carbatrol, but Plaintiff reported that this higher dose made him a little tired. Plaintiff's Carbatrol dosage was reduced. In January of 2008, Plaintiff reported he was still doing well and Dr. Kaplan released Plaintiff to return to work without restrictions, but recommended Plaintiff be cautious when using a forklift, hand jack, double reach or wrapping machine. Impairments that are controllable or amenable to treatment do not support a finding of disability. Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009). While Plaintiff indicated in reports that he completed with his application for benefits that he could not be in the sunlight due to his medication, with the exception of being tired on the higher dosage of the Carbatrol, there is no

-14-

evidence showing that Plaintiff reported negative side effects to his treating physicians. Richmond v. Shalala, 23 F.3d 1441, 1443-1444 (8th Cir. 1994.). The Court finds substantial evidence to support the ALJ determination that Plaintiff does not have a disabling seizure disorder.

With regard to Plaintiff's alleged mental impairments, Plaintiff testified at the January 8, 2009 administrative hearing that he experienced anxiety and panic attacks. A review of the medical evidence reveals that in March of 2007, Dr. Bonner noted Plaintiff had no unusual anxiety or evidence of depression.  The record fails to show that Plaintiff sought on-going and consistent treatment for any mental health impairment.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).  Furthermore, Dr. Brad Williams opined that Plaintiff did not have a severe mental impairment that would last for twelve months. Dr. Williams noted that while Dr. Bonner prescribed Alprazolam[6] in March of 2007, at the same clinic visit, Dr. Bonner found Plaintiff did not exhibit any unusual anxiety or evidence of depression.  The Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

With regard to Plaintiff's headaches, the medical evidence does indicate Plaintiff reported headaches to his treating physicians.  On July 27, 2007, Dr. Kaplan completed a migraine headache report indicating that Plaintiff experienced frontal headaches for which Plaintiff took over-the-counter medication.  Dr. Kaplan opined Plaintiff's headaches did not cause any work

---

[6]Alprazolam is used to treat anxiety and panic disorders. National Library of Medicine available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html

related limitations.  The Court finds substantial evidence to support the ALJ's determination that Plaintiff's headaches are not disabling.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities.  At the administrative hearing, Plaintiff testified that he worked part-time at a convenience store as a cashier, cook and stocker.  (Tr. 31).  Plaintiff testified that he worked Monday through Friday, from 5:00 AM until around 10:30 AM.  Plaintiff testified that he was also able to drive short distances, cook, clean, paint, mow and do laundry. (Tr. 30, 32).  Plaintiff also indicated that he liked to work out in his shop building bird houses and helping his dad with little construction projects.  (Tr. 33).  In a Function Report dated May 31, 2007, Plaintiff indicated that he spent time four-wheeling, fishing, canoeing and camping with his son, daughter and niece.  (Tr. 137).  This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain.  See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application was supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that Plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability).  Neither the medical evidence nor the reports concerning his daily activities support Plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were

-16-

not totally credible.

    **C.**    **RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform work at all exertional levels with some non-exertional limitations.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

-17-

### D.    Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled as he is able to perform work as a hand packager, a small products assembler and a machine tender.  See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.    Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 2nd day of May.


/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-18-